JOHN MUNN, Administrator, *de bonis non*, of JOSEPH MEEK, deceased, *vs.* WILLIAM P. PERKINS.

Where there have been three concurring verdicts in favor of the plaintiffs, it would savor of rashness were this court to interfere and set the verdict last given aside.

In an action upon a warranty of soundness of a slave, where the only proof of unsoundness was, that the defendant when told of the unsoundness, and requested to take the negro back, told the plaintiff " he was not in a situation to take care of her, but that if he would keep her and she died, he would pay all expenses, and it should be his loss"—It was held the evidence was sufficient to uphold a verdict for the plaintiff.

A party having had two new trials in the same case, is not entitled, under the statute, How. & Hutch. 616, to a third new trial.

THIS cause is brought by appeal from the judgment of the circuit court of Madison county.

The action was in assumpsit upon a special contract, and was brought by William P. Perkins, the defendant in this court, against Jesse Meek, administrator of the estate of Joseph Meek, deceased.

The writ issued 3d June, 1839, returnable to November term, 1839.

The declaration contained two counts.

The first count was upon a special contract between the defendant, Perkins, and Joseph Meek, deceased, upon an exchange of a negro girl, Mary, belonging to the defendant, Perkins, for a negro girl, Lucinda, belonging to Joseph Meek, a payment of $200 in addition being made by Meek to Perkins; and the declaration states that Meek " warranted" the girl, Lucinda, to be sound at the time of the exchange, and avers that she was not sound, &c.

The second count was also upon a special contract, and alledges that Joseph Meek fraudulently represented the girl, Lucinda, to be sound, knowing her to be unsound, and that the girl, Lucinda, afterwards died of consumption. To which the

defendant, the administrator of Joseph Meek, pleaded several pleas; but the plea of non assumpsit was the only one relied upon at the first trial.

At the November term of the court, 1841, the cause was tried by the jury, and the defendant in error had a verdict for $1380, which, on motion of the defendant below, was set aside and a new trial granted by the court.

At the May term, 1842, the cause was again submitted to the Jury, and a verdict was rendered for the defendant in error, Perkins, for the sum of $1700. This verdict was also set aside by the court, and a new trial granted.

At the May term, 1842, the record shows the order granting the new trial, was accompanied with leave to the plaintiff below, to amend his declaration. It was also ordered that the suit be revived against John Munn, administrator, *de bonis non*, of Joseph Meek, deceased. On the 10th May, 1842, the defendant in error, Perkins, filed his amended declaration, which contains three counts. The two first being almost literal copies of the original declaration, and the third count is a common count in assumpsit for the sale and delivery of a negro girl, Mary, by Perkins, to Joseph Meek, in his lifetime, for the consideration of $1400, and avers a promise, by Joseph Meek, in his lifetime, to pay that sum for the girl Mary—with the common breach in assumpsit. The plea of assumpsit was the only plea relied upon.

At the November term, 1842, the cause was again tried, and another verdict for defendant in error, Perkins, for $1686 $\frac{66}{100}$. The defendant below moved again for a new trial, which the court below refused to grant; he accordingly embodied the proof given on the last trial in a bill of exceptions; the proof, in substance, was as follows:

James T. Barr, on the part of the plaintiff below, proved that in March, 1836, he was overseer for Joseph Meek, the intestate, and vendor of the girl; that Perkins, the vendee, brought an order to the witness, from Meek, which was in the following words, to wit:

" Mr. Little or Mr. Barr, will deliver to William P. Perkins or

order, one of my two girls, giving him choice—either Lucinda or Charlotte.          (Signed)              " JOSEPH MEEK.
" 19th March, 1836."

That upon receiving the order, he showed the two girls, Lucinda and Charlotte, to Perkins, who examined them carefully, and selected the girl Lucinda; that the girl, at the time Perkins took her away, seemed to be affected with a bad cold, and had great difficulty of breathing, which was known to Perkins at the time.   That when Joseph Meek returned home, witness informed him that Perkins had presented the order, and had taken the girl Lucinda.   Joseph Meek said in reply, that he had sold the girl Mary, that he received of Perkins, and obtained $1500 for her.

That some short time after this, the witness left Joseph Meek, and went to live with Perkins, as overseer.   When he went to live with Perkins, he found the girl engaged in scraping cotton in the field—this was in April, 1836—she was still afflicted with a bad cold and difficulty of breathing.   Soon after this she was taken out of the field and put to doing light work about the house; that the services of the girl were worth her board and clothes the first eighteen months; that, after that time, she was an expense to Perkins; that she continued to get worse, of the same disease, until she died.

That in a subsequent conversation which witness heard between Perkins and Joseph Meek, and a short time before the girl's death, Perkins said to Meek that the girl, Lucinda, had become of no use to him; that she had been sick from the time he had received her from Meek; that she had been an expense to him from the first, &c., and wanted Meek to take her back; that Meek replied to Perkins that he must keep the girl, and that he himself was not in a condition to take care of her, and that he would pay all expenses, and if the girl died, she should be his loss.

Doctor J. J. Pugh was examined as a witness for Perkins, and proved that he was employed as Perkins' family physician, previous to the time that Perkins received the negro woman in question, from Mr. Meek; that soon after the girl went to Per-

kins' witness examined her and found that her bowels were affected, and he treated her for that disease for a considerable length of time. At length he discovered that she was laboring under a confirmed case of consumption, and so informed Mr. Perkins—and that she was incurable; that she continued to get worse until she died of that disease. That he had heard the evidence of the witness, Barr, and he believed from the symptoms, as described by Barr, that the girl had the consumption at the time Mr. Perkins received her from Mr. Meek. That his bill for medical attention to the woman while sick, was about $100; that if the woman, Lucinda, had been sound at the time Perkins purchased her of Meek, she would have been worth $1000; that the woman, Mary, given by Mr. Perkins in exchange for Lucinda, was worth, at the time, about $1500.

Jesse Meek, a witness for the defendant below, proved that the woman, Mary, was not very saleable, because she was too white; that Joseph Meek died in February, 1838; that he was appointed administrator of his estate in March, 1838; that about a year after he was appointed administrator, Mr. Perkins proposed to him to take $300, provided he would relinquish a claim that administrator had on Mr. Perkins for about $300, as security for one Waddington. This was the first time that the witness ever heard of Perkins' claim on account of the woman Lucinda. This was all the evidence given in the case.

The court, at the request of the counsel for the plaintiff in error, instructed the jury,

1. That if the jury believed, from the evidence, that there was no express warranty nor fraud, on the part of Joseph Meek, they must find for the defendant.

2. That a subsequent warranty, without consideration, would be void.

The jury rendered a third verdict for the defendant in error, Perkins, for $1686 $\frac{66}{100}$, and the court below gave judgment accordingly, from which an appeal is taken to this court.

*Hubbard*, for appellant.

The verdict is contrary to the evidence. The amended dec-

laration filed by the defendant in error, on the 10th May, 1842, contains three counts, the two first being literal copies of the two counts in the original declaration, the third count being an entire new one. '

The first count is upon a warranty of soundness of the girl Lucinda. To establish a warranty, there is not the slightest evidence in the record. It is therefore clear that the jury could not have found for the defendant in error upon the first count.

The second count is for a fraud and misrepresentation by Joseph Meek, as to the soundness of the girl Lucinda, and there is as little evidence to sustain this count, as there is to sustain the first. Indeed the only evidence in the record of any contract between Joseph Meek and the defendant in error, is the order copied into the bill of exceptions, which is in the following words, to wit: " Mr. Little, or Mr. Barr, will deliver to William P. Perkins, or order, one of my two girls, giving him choice, either Lucinda or Charlotte. 19th March, 1836. (signed) Joseph Meek." There is certainly no evidence of a warranty in this order, nor is there any evidence of fraud or misrepresentation. The witness, Barr, also proves that when Joseph Meek returned home from Natchez, after the defendant in error had taken the girl Lucinda away, Meek informed the witness that he had received from Perkins, in exchange for the girl Lucinda, a girl of the name of Mary, and that he had sold her for $1500, and that he had paid Perkins $200 boot, in the exchange of the two girls. This is the substance of all the testimony in the record, going to prove the contract between the parties. The witness, Barr, proves that Perkins, when he presented the order for the girl, examined both the girls mentioned in the order, and was informed by the witness that they both had bad colds, and the girl Lucinda had a difficulty of breathing; that Perkins, after examining them both, selected the girl Lucinda; from all of which, it is clear, that Perkins took the girl Lucinda upon his own judgment, as to her health and soundness. If the girl was unsound at the time of exchange, or at the time that Perkins took her away from the plantation of Joseph Meek, it was nothing more than a bad cold, accompanied with difficulty of breathing, which disease she had

contracted a short time before by being exposed in travelling from Natchez, to the plantation of Meek, in Madison county, which disease was obvious, and known to Perkins at the time he received her from Barr, the overseer of Meek at the time; and, on the other hand, the evidence establishes the fact, that Meek had no knowledge whatever of the ill health of the girl, for he was not at home, but was absent at Natchez at the time.

In the sale of personal property, the rule is, that if the vendor does not warrant the quality of the property, and is not guilty of any fraud, as by suppressing the truth, or by falsely misrepresenting the quality of the property, the vendee takes the property without remedy for defects, although it turns out to be of no value whatever. See *Siexas* v. *Woods*, 2 Caine's Rep. 48. *Snell* v. *Moses*, 1 J. R. 96. *Perry* v. *Aaron*, 1 J. R. 129. *Defreeze* v. *Trumper*, 1 J. R. 274. *Holden* v. *Dakin*, 4 J. R. 421. *Swett* v. *Colgate*, 20 J. R. 196.

It is therefore clear, that, if the jury found for the defendant in error, upon either the first or second counts, the verdict is without evidence, and if they found under the third and last count, then the verdict is contrary to the evidence. The third count in the declaration is a common count in assumpsit, for the sale and delivering of a negro girl, Lucinda, sold by Perkins, the defendant in error, to Joseph Meek, in his lifetime, for the consideration of $1400. There is certainly no evidence in the record to sustain this last count; the evidence already referred to, only proves an exchange of slaves between Joseph Meek in his lifetime, and the defendant in error, Perkins; and that the former paid the latter $200 in boot as the difference in the value of the two slaves. Proof of an exchange of personal property will surely not sustain a count for the sale of the property exchanged.

The distinction between an exchange of property, and a sale of property, is, " that in the former case, one commodity is given, or bartered in exchange for another; in the latter, money is given as the price of the commodity sold." Comyn on Contracts, 130. 2 Blackstone Com, 446. Long on Sales, 1.

It cannot be supposed that the jury found for the defendant in error, under either the first or second counts, there being no

evidence whatever to sustain either; and if they found under the third count, which is for the sum of $1400 for the price of a negro girl, Lucinda, sold by Perkins to Joseph Meek in his life-time, then the verdict is clearly contrary to the evidence, which only proves an exchange of slaves, and not a sale.

But the witness, Barr, proves also a conversation between Perkins and Joseph Meek, which took place at Livingston, some two or three years after the contract and exchange of slaves took place between the parties, and a short time before the girl died, in which conversation the witness says in substance, that Perkins told Meek that the girl, Lucinda, had been sick ever since he had first received her; that she had been of no use or value to him, but had been an expense, and Perkins then re-quested Meek to take her back; to which Meek in substance replied, that he could not take her back; that he was not in a situation to take care of her, and that he, Perkins, must keep the girl, and he, Meek, would pay all expenses, and that if she died it should be his loss, &c. It was urged in the court below, by the counsel for the defendant in error, that the jury was war-ranted in finding their verdict for the defendant in error, upon this evidence under the third count, in the amended declaration. But it is not perceived upon what principle of law or reason, this argument could be seriously urged.

The contract of exchange of slaves had taken place between the parties, Perkins and Joseph Meek, some two or three years before this last conversation, and each of them had delivered over to the other the slaves agreed to be exchanged, and Meek had paid over to Perkins, the $200 boot agreed by him to be given to Perkins, as the difference in the value of the slaves, so that the contract had long been executed, the consideration on the part of each paid, and there was a final end of the contract about the exchange of the slaves, long before the date of this last conversation. Then, what, I ask, is the legal effect of the promise by Joseph Meek, to pay the expenses of keeping and taking care of the girl, Lucinda, and of his saying that if she died, it would or should be his loss? &c. Joseph Meek was certainly under no legal or even moral obligation to make suc

a promise or admission.  If, then, what Joseph Meek said in this last conversation, can be construed into a promise to pay Perkins for his trouble and expense in taking care of the girl Lucinda, or to pay him the original value of the girl Mary or Lucinda, it is clear there was no sufficient legal consideration upon which to base such a promise.  If, indeed, what Meek then said, amounts to a promise to pay, it was a promise without a consideration; a mere " *nudum pactum*," and therefore void. As to the consideration necessary to support a promise, and to maintain an action thereon, see Comyn on Contracts, 10, 11, 12, 13.

But suppose in this the counsel for the plaintiff in error is mistaken, and that what Joseph Meek said to Perkins in this last conversation, shall be deemed a promise to pay, and based on a sufficient consideration, then there is no count in the declaration upon this supposed promise; the third count is upon a promise made at the time of the exchange of slaves.  There should have been a special count upon this special promise, otherwise the evidence, if it proves anything, proves a contract different from the one declared on.  There is, therefore, no evidence in this record to sustain or authorize the finding of the jury under either of the counts in the plaintiff's declaration.

It was insisted in the court below, by the counsel for the defendant in error, that the plaintiff in error was precluded from the benefit of another new trial in this cause, by the provisions of the 11th section of the act of 1822, How. & Hutch. 616, which enacts that " Every new trial granted at law, shall be on such terms and conditions as the court shall direct, and no more than two new trials shall be granted to either party in the same cause ;" and it is presumed that the same objection will be urged before this court, to avoid a reversal of the judgment below, and to prevent a new trial; to all of which, it is deemed a sufficient answer to say, that although two new trials have been granted by the court below, since the commencement of this suit in the circuit court, there has been no new trial since the 10th of May, 1842, the day on which the amended declaration was filed. It is evident from the fact that the defendant in error filed an

amended declaration at that time, and then filed an entire new count, that he was satisfied that he could not recover upon his declaration as it was before that time. It is very probable, and indeed quite certain, that the last verdict was upon the third count in the amended declaration, which, when filed, must be regarded as an entire new case between the parties; that the amended declaration was deemed by the plaintiff below, as essential to his success, or he would not have filed it. There has been no new trial since the amended declaration was filed, and, therefore, it is insisted that the act of assembly, referred to, has no application whatever to this case. See 10 Yerg. 499.

The plaintiff in error, therefore, respectfully insists that the court below erred in refusing to grant a new trial, and that the judgment ought to be reversed, &c.

*John S. Brien*, for appellee.

There are five causes of error assigned by the plaintiff; we deem it only necessary to notice the first and second of them.

1. The jury found contrary to the evidence, &c.

2. They found without evidence.

It will be seen by an examination of the testimony in the record, that no such ground of error exists. So far from the jury finding without evidence, we think the proof fully sustains the verdict. The issue involved in the case in the court below, was an issue of fact to be ascertained by the jury, and their finding will not be set aside unless the testimony against that finding greatly preponderated.

This, we understand to be the settled law upon the subject of new trials upon matters of fact, and can cite many authorities in support of this view. It is decided " that the supreme court will not grant a new trial, because the verdict of the jury is against evidence, unless there is a great preponderance against the verdict. See *Grubb's Lessees* v. *McClatchy*, 3 Yerger Rep. 442. *Perry* v. *Smith* & *Mayfield*, 4 Ib. 323. *Cassels* v. *The State*, 4 Ib. 149. *Lellens* v. *Davis*, 4 Ib. 503. *Harbaurn* v. *Raybaum* et al. 7 Ib. 432. *Williams* v. *Barfield*, 9 Ib. 270. *Fow-*

*ler* v. *Etna Insurance Co.* 7 Wend. 270. *Winchel* v. *Latham,* 6 Cowen, 682. *Ackley* v. *Kellogg,* 8 Ib. 223. We could cite numerous other authorities, but we feel that it would be an unnecessary consumption of time.

We think that there is another point in the case, that precludes any further inquiry into the cause. It is this; there has been two new trials already in this cause, and this is the third application for a new trial; the case having been three times tried upon the facts, cannot again be tried unless there is in the record error of law, upon which the cause ought to be revised. See Rev. Code, which is in these words: "every new trial granted at law, shall be on such terms and conditions as the court shall direct; and not more than two new trials shall be granted to either party." Rev. Code, 121.

Mr. Justice CLAYTON delivered the opinion of the court.

The point relied on for reversing the judgment in this cause, is, that the verdict is contrary to the evidence. There have been three concurring verdicts in favor of the plaintiff below, the defendant in this court; and it would savor of rashness, were this court to interpose and set aside the verdict. We are by no means convinced that the finding was contrary to the testimony. It was an action upon a warranty of soundness of a slave. The only evidence of the warranty, was a conversation which occurred between the parties in the presence of the witness some time after the exchange of negroes was made, out of which the controversy grew. In that conversation, upon being told of the unsoundness of the negro and requested to take her back, Meek said that he was not in a situation to take care of her; but if Perkins would keep her, and she died, he would pay all expenses and it should be his loss. It is insisted that this was a promise without consideration, and that the jury could not properly make it the foundation of a verdict. The evidence, however, might be regarded by the jury as an acknowledgment by Meek of a previous liability on his part, and an admission that he was bound by the original contract to do what he then promised he would do. In this view, it was not a promise creating a new lia-

bility, but an act recognizing an old one, and not requiring any new consideration to support it.   The conversation would readily admit of that construction, and would thus entirely justify the finding.

But there is another reason why we cannot reverse the judgment, and grant a new trial in this case.   Our statute enacts "that no more than two new trials shall be granted to either party in the same cause."   How. & Hutch. 616.   The plaintiff in error has already had that number.   At common law, it would only have been in a very extraordinary case, that any court would have granted more than two.   Graham on New Trials, 541–2.   We will not say, that, since the statute, a court would, in no posible case, be justified in setting aside a third verdict; it may be that when they have been obtained by misdirection on the part of the court, the error, in point of law, might still be corrected.   See 10 Yerger, 499.   But this is not a case of that kind.

We therefore affirm the judgment.